UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **C&M OILFIELD RENTALS, LLC,** *doing business as* **C-MOR ENERGY SERVICES** § § § | |
| **Plaintiff,** § § | |
| v. § § | CIVIL ACTION NO. 4:22-CV-965 |
| **ENSIGN US SOUTHERN DRILLING LLC,** § § § | |
| **Defendant.** § § | |

## MEMORANDUM OPINION

Pending before the Court[1] is Defendant's Opposed Motion to Stay Pending Patent Trial and Appeal Board's Resolution of Instituted Inter Partes Review. (Dkt. No. 60.) Additionally, this patent case is before the Court for construction of a disputed claim term in United States Patents No. 10,976,016 ("the '016 Patent") and 10,900,626 ("the '626 Patent") (collectively, "the Patents"). The owner of the Patents, C&M Oilfield Rentals, LLC ("C&M"), alleges that Ensign US Southern Drilling LLC ("Ensign") has infringed the Patents. (Dkt. No. 44 at ¶ 1.) The Court has considered the motion, all other relevant filings, and the applicable law and **DENIES** Defendant's Opposed Motion to Stay Pending Patent Trial and Appeal Board's Resolution of Instituted Inter Partes Review (Dkt. No. 60). The Court also received briefing from both Parties,

---

[1] On February 15, 2023, a motion was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 42.) Claim construction is a non-dispositive, pretrial issue appropriate for an order. *See SciCo Tec GmbH v. Boston Sci. Corp.*, 599 F. Supp. 2d 741, 742 (E.D. Tex. 2009). A motion to stay proceedings is a nondispositive motion appropriately decided by a magistrate judge. *Trojan Battery Co., LLC v. Golf Carts of Cypress, LLC*, No. 4:21-CV-03075, 2022 WL 970240, at *1 n.1 (S.D. Tex. Mar. 31, 2022).

held a *Markman* hearing on October 2, 2023, and now issues this construction of the disputed terms for the reasons set forth below.

## I. BACKGROUND

On March 24, 2022, C&M filed a patent infringement suit against Ensign. (Dkt. No. 1.) On March 24, 2023, C&M filed a Second Amended Complaint. (Dkt. No. 44.) C&M is in the business of marketing, leasing, and selling oilfield service equipment to customers nationwide and is a "market-leading innovator in the development of modular drilling rig lighting systems." (*Id.* at ¶¶ 8-9.) "Ensign is in the business of providing oilfield services to the oil and natural gas industry, such as drilling, well servicing, equipment rentals and transportation." (*Id.* at ¶ 32.) C&M owns the Patents. (*Id.* at ¶¶ 20, 27.)

The contested term referenced in the Patents is "mounting pole." (Dkt. No. 50 at 8.) The term "mounting pole" is in asserted claims 1, 2, and 23 of the '016 Patent and claims 9 and 19 of the '626 Patent. (Dkt. No. 50 at 4; Dkt. No. 51 at 9.) "The '016 Patent and '626 Patent share a nearly identical specification." (Dkt. No. 50 at 6 n.1.) "The parties agree that both 'mounting' and 'pole' maintain their plain and ordinary meanings across the claims of the two [] Patents [a]nd there is no dispute that a 'mounting pole' is used for mounting." (*Id.* at 8.) The Parties dispute whether the plain and ordinary meaning of "mounting pole" means "an 'elongated structure fixed at one end and for mounting where the length of the structure far exceeds the width,' as C&M proposes, or '[a] pole can be cut shorter and still remain a pole, even if its length no longer far exceeds the width,' as Ensign proposes." (*Id.*) The parties have filed a Joint Claim Construction Chart and submitted extensive briefing on the disputed claim terms. (Dkt. Nos. 50-53.)

## II. LEGAL STANDARDS

"It has long been understood that a patent must describe the exact scope of an invention

and its manufacture to 'secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them.'" *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) (quoting *McClain v. Ortmayer*, 141 U.S. 419, 424 (1891)). The patent "contains a specification describing the invention 'in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same'" and "one or more 'claims,' which 'particularly poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention.'" *Id.* (quoting 35 U.S.C. § 112).

"The general rule . . . is that each claim term is construed according to its plain and ordinary meaning as understood by a person of ordinary skill in the art ('POSITA') at the time of the invention in the context of the patent." *U.S. Well Servs., LLC v. TOPS Well Servs.*, No. 3:19-CV-00237, 2020 WL 9439469, at *4 (S.D. Tex. Sept. 18, 2020). To show what a POSITA would understand a disputed term in a patent to mean, courts look at "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)) (internal quotations omitted). There are only two exceptions to the general rule that claim terms are construed according to their plain and ordinary meaning, including: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (internal quotations and citation omitted).

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in

evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id.* To start, "the context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314. "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Id.* (citing *Vitronics Corp.*, 90 F.3d at 1582). "[S]econd, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning" because the specification is usually dispositive and the best guide to the meaning of a disputed term. *Vitronics Corp.*, 90 F.3d at 1582; *Phillips*, 415 F.3d at 1315. "Third, the court may also consider the prosecution history of the patent," which includes "the complete record of all the proceedings before the Patent and Trademark Office." *Vitronics Corp.*, 90 F.3d at 1582.

"Only if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should the trial court have resorted to extrinsic evidence, such as expert testimony, [inventor testimony, dictionaries, and technical treatises and articles] in order to construe claim." *Id.* at 1584. "[E]xtrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319.

### III. DISCUSSION

The Parties dispute the construction of the term "mounting pole." (Dkt. No. 50 at 8.) Although the Parties agree that "mounting" and "pole" maintain their plain and ordinary meanings and that a mounting pole is used for mounting, the Parties disagree on whether the plain and ordinary meaning of "mounting pole" means "an 'elongated structure fixed at one end and for

mounting where the length of the structure far exceeds the width,' as C&M proposes, or '[a] pole can be cut shorter and still remain a pole, even if its length no longer far exceeds the width,' as Ensign proposes." (*Id.*)

| C&M's Proposed Construction | Ensign's Proposed Construction |
|---|---|
| Plain and ordinary meaning, which is: "elongated structure fixed at one end and for mounting where the length of the structure far exceeds the width" | A "mounting pole" is a pole used for mounting something. Both "mounting" and "pole" have their plain and ordinary meanings. A pole can be cut shorter and still remain a pole, even if its length no longer far exceeds the width. |

    a. **Intrinsic Evidence**

C&M contends that there is no reason to depart from the plain and ordinary meaning because the intrinsic evidence favors their proposed claim construction. (*Id.* at 12.) To the contrary, Ensign argues that the plain and ordinary meaning of "mounting pole" favors their claim construction and that C&M has not met their burden in proving otherwise. (Dkt. No. 51 at 6-11.) The asserted claims and specifications of the Patents neither include a definition of "mounting poles" nor does C&M disavow the scope of "mounting pole." (*Id.* at 8-10; Dkt. Nos. 44-1, 44-2.) As such, the two circumstances for deviating from the plain and ordinary meaning, lexicography and disavowal, are not present as conceded by the Parties. (Dkt. No. 50 at 12; Dkt. No. 51 at 8-10.)

    i. **Claims**

C&M argues that a POSITA would understand a "mounting pole" to "mean a structure that is (i) fixed at one end (e.g., 'a bracket' is 'configured to attach the mounting pole to the crown deck of the rig') and (ii) used for mounting something (e.g., 'mounting a plurality of lights to the plurality of mounting poles')." (Dkt. No. 50 at 9.) C&M relies upon claims 17 and 23 of the '016 Patent which states:

> (i) mounting a plurality of lights to the plurality of mounting poles, wherein each of the plurality of mounting poles supports at least one of the plurality of lights, and each of the plurality of lights is mounted to only one of the plurality of mounting poles, and (ii) a mounting pole, wherein each light unit comprises a separate mounting pole, such that the system comprises a plurality of mounting poles, and a light fixture comprising one or more lights, the light fixture coupled to the mounting pole, respectively.

(*Id.*) (internal quotations omitted). C&M also relies upon the language in claims 9 and 19 in the '626 Patent, which states "a plurality of light units attached to the handrail where each light unit comprises a mounting pole and the light fixture coupled to the mounting pole" and "mounting a plurality of mounting poles on a crown deck of a rig, wherein each of the plurality of mounting poles is attached to a handrail of the crown deck and mounting a plurality of lights to the plurality of mounting poles." (*Id.* at 9-10) (internal quotations omitted).

Ensign does not dispute that the claims in the Patents require a mounting pole to be fixed at one end and used for mounting something, but rather Ensign argues that the claims do not support C&M's proposal that a "mounting pole" is elongated where the length far exceeds the width. (Dkt. No. 51 at 5.) Because the claims do not define or specify whether a "mounting pole" is elongated where the length must far exceed the width, the Court must consider the specifications to determine whether there are any inconsistencies in regards to the Parties' proposals for claim construction. *See Vitronics Corp.*, 90 F.3d at 1582.

   ii. **Specifications**

Relevant in determining whether a mounting pole is an elongated structure where the length must far exceed the width, C&M points to a specification in the '016 Patent to support their claim construction that states "it is preferable that mounting pole 240 be formed of a single unitary piece rather than multiple separate portions that are joined together using bolts, screws, hinges, or other similar connections." (Dkt. No. 44-1 at 24.) However, a specification in both the '016 Patent and

the '626 Patent includes that "[o]ne benefit of this alternative embodiment is allowing the use of shorter mounting poles, which thereby reduces the overall weight of the system." (*Id.* at 23; Dkt. No. 44-2 at 13.) Ensign argues that the specifications do not support C&M's proposed construction of "mounting pole" because it is not specifically defined. (Dkt. No. 51 at 10-11.)

Here, the specifications are not dispositive of the meaning of the disputed term because the specifications do not clearly suggest what the plain and ordinary meaning of "mounting pole" is and the specifications can be understood to support either Parties' proposal as referenced above. (Dkt. No. 44-1 at 23-24; Dkt. No. 44-2 at 13); *see Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312 (Fed. Cir. 2006) (explaining that the court used language of a written description to conclude that "a fuel filter is the only 'fuel injection system component' [] and that a fuel filter was not merely discussed as a preferred embodiment . . . [because] the written description refers to the fuel filter as 'this invention' or 'the present invention.'"). Because the specifications do not clearly define or specify whether a mounting pole's length must far exceed the width, the Court may also consider the prosecution file history. *See Vitronics Corp.*, 90 F.3d at 1582.

### iii. Prosecution File History

Ensign claims that the prosecution file history does not favor C&M's proposed claim construction because "the examiner in the '016 [Patent] file history did not share C&M's view that a mounting pole's 'length far exceeds the width[]'" or that a "mounting pole" is different than a "post." (Dkt. No. 51 at 11.) C&M argues that "the applicants consistently rejected the Examiner's characterization of that reference's teachings regarding a 'mounting pole,'" and that the Court should account for the applicants' statements over an examiner's acceptance or rejection of such statements. (Dkt. No. 52 at 5-6); *Digital Tech. Licensing, LLC v. Cingular Wireless, LLC*, No. 2:06-CV-156, 2007 WL 2300792, at *5 (E.D. Tex. Aug. 7, 2007) ("It is the *applicants'* statements that

matter when construing the scope of an invention, not whether the *examiner* accepted or rejected them.") (emphasis in original). Because the applicants rejected the examiner's characterization of "mounting pole" to the extent it is inconsistent with their proposed claim construction, the Court will not consider the examiner's differing view.

### iv. Prior Construction

Ensign argues that the Court should construe "mounting pole" as its plain and ordinary meaning to include that a "pole can be cut shorter and still remain a pole, even if its length no longer far exceeds the width" because the court in *C&M Oilfield Rentals, LLC v. Apollo Lighting Sols. Inc.* construed the '016 Patent as such. No. 6:21-CV-00544-ADA, 2022 WL 1050318 (W.D. Tex. Apr. 7, 2022).[2]

The Court may consider another court's construction of a term "in the interest of promoting uniformity in the treatment of a given patent[,]" but the Court is not required to follow another court's construction of a term when the court "did not explain why it elected its construction" or provides little to no explanation. *See Tessera, Inc. v. Micron Tech., Inc.*, 423 F. Supp. 2d 624, 629 (E.D. Tex. 2006) (holding that an election of a construction that is better supported by the entirety of the intrinsic evidence over a prior claim construction in a separate matter where the court did not explain why it choose a particular construction and where uniformity would not be affected was warranted) (internal quotations omitted); *see also Texas Instruments Inc. v. Linear Tech. Corp.*, 182 F.Supp.2d 580, 589 (E.D. Texas 2002) (holding that courts may elect to defer to

---

[2] The court in *C&M Oilfield Rentals, LLC* rejected C&M's proposal that requires the length of a "mounting pole" to "far exceed the width" because a "pole can be cut shorter and still remain a pole, even if its length no longer far exceeds the width as proposed." 2022 WL 1050318, at *4. However, the court primarily focuses the analysis on why it rejected defendant's proposal for "mounting pole" to be construed as "support post" rather than addressing how it came to the conclusion that a new construction was warranted or what evidence it relied upon. *Id.*

previous claim constructions on a case by case basis).

In *C&M Oilfield Rentals*, LLC, 2022 WL 1050318, the case settled and the parties did not have a chance to contest the construction on appeal. Due to the timing of the settlement and the brevity of the analysis by the court in *C&M Oilfield Rentals, LLC*, the Court elects to construe "mounting pole" with little deference to the prior determination. 2022 WL 1050318.

    **v.**  **Ambiguity**

Ensign claims that C&M's proposal for "mounting pole" creates ambiguity because there is no numerical value or ratio assigned to measure the length and width and that C&M's expert witness confirmed the indefiniteness. (Dkt. No. 51 at 13); *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005) ("Courts construe claim terms in order to assign a fixed, unambiguous, legally operative meaning to the claim."). C&M argues that Ensign's proposed construction creates ambiguity because "Ensign's position that '[a] pole can be cut shorter and still remain a pole, even if its length no longer far exceeds the width,' the jury would erroneously conflate a 'mounting pole' with any other structural component that could be used to mount something." (Dkt. No. 52 at 6.) Furthermore, C&M claims that Ensign's proposed construction "does not reflect a POSITA's understanding of the term's plain and ordinary meaning in light of the intrinsic evidence." (*Id.*)

Although "[d]efiniteness is a statutory requirement for patentability[,]" patentees do not need to "define [the] invention with mathematical precision in order to comply with the definiteness requirement." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1346-47 (Fed. Cir. 2022). The important goal in the public notice function of a patent is to "provid[e] clarity such that a [POSITA] could determine whether or not an accused product or method infringes on the claim." *Id.* "And we have recognized that '[c]laim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art

when read in the context of the invention.'" *Id.* at 1347 (quoting *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014)). Additionally, patentees commonly use descriptive words "to avoid a strict numerical boundary to a specified parameter." *Id.* (quoting *Braintree Lab'ys, Inc. v. Novel Lab'ys, Inc.*, 749 F.3d 1349, 1360 (Fed. Cir. 2014)) (internal quotations omitted).

The Court agrees with C&M that Ensign's proposed construction fails to account for a POSITA's understanding that a "mounting pole" needs to be distinguishable from other structural components, such as a post. (*Id.* at 7.) Due to the importance of a patent giving notice and clarity to a POSITA, it is significant that C&M's expert witness' statement that a POSITA would not be understood as a short, stubby post to also qualify as a "mounting pole" when considering Ensign's proposed construction. (Dkt. No. 50 at 16.) Moreover, it is not required that C&M's proposed construction identify a numerical measurement or ration in determining length and width, but that a POSITA would be provided enough clarity when read in the context of the invention. *See Niazi Licensing Corp.*, 30 F.4th at 1347. As such, the Court finds that Ensign's proposed construction is ambiguous and C&M's construction unambiguous.

  b. **Extrinsic Evidence**

In addition to the intrinsic evidence, C&M claims that extrinsic evidence supports C&M's construction, including expert witness statements and dictionary definitions. (Dkt. No. 50 at 12-15.) Ensign argues that the Court should not accept C&M's expert witness' claim construction but does not provide their own expert witness or dictionary definitions to the contrary. (Dkt. No. 51 at 14.)

      **i.    Expert Witness**

C&M relies upon expert witness, Dr. Gary Wooley, who offers a perspective of a POSITA.[3] (Dkt. No. 50 at 13.) Important here, Dr. Gary Wooley explains that a "mounting pole" is understood to have a length that far exceeds its width, which distinguishes it from other structures, such as a "post" that is "shorter or more 'squat'" and has a "lesser slenderness ratio than a pole." (*Id.*) Ensigns argues that Dr. Gary Wooley's declaration should be stricken and not relied upon because by the Court because C&M instructed Dr. Gary Wooley to abstain from answering questions during a deposition. (Dkt. No. 51 at 16-17.) Additionally, Ensign argues that the Court should not adopt Dr. Gary Wooley's claim construction due to prior occasions of his claim constructions being rejected by the United States Patent and Trademark Office ("USPTO"). (*Id.* at 14-18.)

First, Ensign argues[4] that the Court should reject Dr. Gary Wooley's construction of "mounting poles" because when shown specific photographs of lighting systems, he refused to answer whether the photograph depicted a mounting pole. (*Id.* at 6.) Ensign further claims that C&M improperly instructed Dr. Gary Wooley to abstain from answering questions during the deposition. (*Id.* at 16-17.) C&M responds to Ensign's argument regarding Dr. Gary Wooley by stating that Ensign went outside the scope of deposition when asking questions about validity and

---

[3] Dr. Gary Wooley states that a POSITA would have at minimum "a bachelor's degree in Mechanical and/or Electrical Engineering with at least one year of experience working on rotary drilling rigs . . . and their associated lighting systems, and/or the installation and application of lighting systems used to illuminate wellsites where rotary drilling or well servicing operations are occurring.'" (Dkt. No. 50 at 7-8.) Mr. Gary Wooley possesses "a Ph.D. in Engineering Science, over 50 years of experience in the oil and gas industry, and specific experience working on rotary drilling rigs and with their associated lighting systems." (*Id.* at 12-13.) As such, C&M asserts that Dr. Gary Wooley qualifies as a POSITA. (*Id.* at 13.)

[4] Ensign also argues that the Court should not accept Dr. Gary Wooley's construction of "mounting pole" because he "could not and would not provide a specific percentage or number as to how much the length must 'far exceed' the width" during a deposition. (Dkt. No. 51 at 14.) However, as explained above, a patent does not need to contain mathematical precision. See *Niazi Licensing Corp.,* 30 F.4th at 1346-47.

infringement, rather than limiting the depositions to opinions offered by Dr. Gary Wooley about the meaning of the disputed term. (Dkt. No. 52 at 4, 8.) C&M claims that Ensign went outside the scope of the deposition by questioning Dr. Gary Wooley about photographs of certain products provided by Ensign because that line of questioning was not limited to his opinion of the meaning of "mounting poles." (*Id.* at 8.)

The Court does not strike Dr. Gary Wooley's declaration because Ensign's questions went outside the scope of the deposition and were not material to the opinions Dr. Gary Wooley offered about the meaning of the disputed term.

Next, Ensign contends that Dr. Gary Wooley's construction should not be adopted because his claim constructions were rejected by the USPTO on two occasions. (*Id.* at 17-18.) C&M argues that Ensign has not provided any authority stating that the Court must automatically reject Dr. Gary Wooley's opinions because the Patent Trial and Appeal Board ("PTAB") disagreed with his opinions in separate matters. (Dkt. No. 52 at 7.) The Court agrees with C&M that Ensign has not presented authority to support their position. As such, separate instances where the USPTO or PTAB have disagreed with Dr. Gary Wooley do not impact the Court's ability to consider his claim construction.

### ii. Dictionary Definitions

C&M cites to the Oxford English Dictionary, which defines a pole as a "long, straight, slender, and more or less cylindrical piece of wood or another material, used in scaffolding, as a support, or for various other purposes" and defines mounting as "[r]ising, ascending, [and] soaring." (Dkt. No. 50 at 14.) Dr. Gary Wooley explained how the Oxford English Dictionary definitions are "consistent with the elongated aspect of a mounting pole that is longer than it is wide so as to, in the context of the [] Patents, transfer the loads from the lights at height to the

crown deck." (*Id.*) (internal quotations omitted). Accordingly, C&M argues that the extrinsic evidence supports the plain and ordinary meaning of "mounting pole" as an "elongated structure fixed at one end and for mounting where the length of the structure far exceeds the width." (*Id.* at 15.) Ensign claims that C&M's construction of "mounting pole" does not appear in any dictionary and that the dictionary definitions offered by C&M are not inconsistent with Ensign's proposal. (Dkt. No. 51 at 6, 11.) However, Ensign does not offer contrary dictionary definitions. (*Id.*) The Court agrees with C&M that the dictionary definitions as supported by a POSITA are consistent with the extrinsic evidence and support C&M's claim construction. Because the extrinsic evidence is consistent with the intrinsic evidence and C&M's claim construction claim does not contain ambiguities, the Court adopts C&M's proposed claim construction for the Patents.

## IV. MOTION TO STAY

Ensign filed a Motion to Stay Pending the Patent Trial and Appeal Board's Resolution of an Instituted Inter Partes Review (Dkt. No. 60) of the '016 Patent. C&M opposes the Motion to Stay. (Dkt. No. 61.) Ensign filed petitions for inter partes review ("IPR") of the Patents and the PTAB granted Ensign's petition for the '016 Patent on October 26, 2023. (Dkt. No. 60 at 6.) The second petition for the '626 Patent remains pending. (*Id.*)

"The decision to stay a patent case pending reexamination is entirely in the Court's discretion." *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 762 (S.D. Tex. 2010). "In determining whether to grant a stay, courts consider several factors: (1) prejudice or tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question; and (3) whether discovery is complete and a trial date has been set." *Id.*

### a. Prejudice to the Non-Moving Party

Ensign contends that a stay would not unduly prejudice C&M because (1) Ensign is not

currently marketing an allegedly infringing product; (2) Ensign is not and will not be offering its customers a drilling rig light that allegedly infringes on the Patents; (3) Ensign has produced substantial responsive documentation while C&M has not; and (4) C&M has not sought a preliminary injunction. (Dkt. No. 60 at 13-15.) C&M argues that a stay would be unduly prejudicial because (1) C&M would be denied of a just and speedy resolution of its counts that are untethered to the IPR of the '016 Patent; (2) it would risk the loss of testimonial and documentary evidence potentially valuable to C&M's case; and (3) monetary relief could not remedy the harm that C&M would incur from a stay of the entire case. (Dkt. No. 61 at 11-12.) The Court agrees with C&M that it would be prejudiced by a stay.

Although Ensign argues that it is neither currently marketing or offering its customers the infringed upon product nor will in the future, there would be no legal barrier preventing Ensign from resuming the activity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) ("If defendants could eject plaintiffs from court on the eve of judgment, then resume the complained-of activity without fear of flouting the mandate of a court, plaintiffs would face the hassle, expense, and injustice of constantly relitigating their claims without the possibility of obtaining lasting relief."). Additionally, the fact that C&M did not seek a preliminary injunction does not invalidate C&M's prejudice claim. *Neuro Cardiac Techs., LLC v. LivaNova, Inc.,* No. CV H-18-1517, 2018 WL 4901035, at *3 (S.D. Tex. Oct. 9, 2018) ("The fact that Neuro-Cardiac is pursuing damages rather than an injunction does not preclude it from experiencing prejudice from a stay.").

In balancing the Parties' interests, C&M's interest in avoiding prejudice by timely enforcing their patent rights, avoiding the risk of lost evidence, and the inability to remedy the harm with monetary relief weighs in favor of denying a stay. *See Smart Mobile Techs. LLC v. Apple*

*Inc.*, No. 6:21-CV-00603-ADA, 2023 WL 5051374, at *2 (W.D. Tex. Aug. 8, 2023); *see also Intell. Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 11363370, at *2 (E.D. Tex. Dec. 13, 2018). As such, the Court finds that this factor weights against a stay.

      b.  **Simplification of Issues**

Ensign argues that regardless of the outcome of the IPR process, litigation is likely to be simplified because the USPTO has expertise in evaluating prior art and assessing patent validity. (Dkt. No. 60 at 17-18.) Conversely, C&M claims that even if a single claim survives the IPR, which is likely, all of the key patent issues remain, including infringement, validity, and damages. (Dkt. No. 61 at 13.) Additionally, C&M claims that without an estoppel effect, such as a stipulation to not relitigate the IPR issue, there is no guarantee that a stay would simplify the issues. (*Id.* at 14.) Finally, C&M argues that a stay is not appropriate where all the asserted issues are not being reviewed. (*Id.*) The Court agrees with C&M.

A "stipulation not to relitigate the same issues in this case if any claims survive *ex parte* reexamination" favors a stay. *See VideoShare, LLC v. Meta Platforms Inc.*, No. 6-21-CV-00254-ADA, 2022 WL 2718986, at *5 (W.D. Tex. July 12, 2022), *reconsideration denied*, No. 6-21-CV-00254-ADA, 2022 WL 3142622 (W.D. Tex. Aug. 5, 2022). Where a potential benefit from a stay is speculative, a stay is unwarranted. *Fairfield Indus. Inc. v. Seabed Geosolutions (US) Inc.*, No. CV H-17-1458, 2018 WL 6594013, *1 (S.D. Tex. July 3, 2018). Here, there is no agreement that Ensign will not relitigate issues determined by the IPR process, there are additional issues to litigate aside from the IPR issues, such as breach of contract, and a potential benefit from a stay is speculative. (Dkt. No. 61 at 14-15.) As such, the Court finds that this factor weighs against a stay.

      c.  **Stage of Proceedings**

Ensign argues that the stage of the proceedings favors a stay because discovery is

incomplete, Ensign has produced substantial documents while C&M has produced far less, no dispositive motions have been filed, and the only deposition was of C&M's claim construction expert. (Dkt. No. 60 at 18.) Additionally, Ensign argues that the date set for trial is after the statutorily required resolution of the IPR. (*Id.*) C&M claims that the stage of the proceedings weighs against a stay because this case has been ongoing for about one year and nine months, there have been two motions to extend certain deadlines and a joint motion to stay all deadlines, and failed settlement negotiations. (Dkt. No. 61 at 16.) Furthermore, the Parties fully briefed a motion to strike Ensign's affirmative defense of invalidity, negotiated and sought entry of a protective order, and C&M filed a Second Amended Complaint. (*Id.*) The Parties have also engaged in discovery, including initial disclosures, written discovery requests, objections and responses to discovery requests, completed construction claim briefing, and attended a *Markman* hearing. (*Id.* at 16-17.) The Court agrees with C&M that the stage of the proceedings do not favor a stay. As such, the Court denies Ensign's Motion to Stay.

V.  **CONCLUSION**

Based on the foregoing, the Court **DENIES** Defendant's Motion to Stay (Dkt. No. 60). Based on the evidence and the application of governing claim construction principles, the Court construes the disputed terms of "mounting pole" as set forth herein.

**SIGNED** in Houston, Texas on December 28, 2023.

_____
Sam S. Sheldon
United States Magistrate Judge